**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

YARILIZ RIVERA-RIVERA, ET AL.,

**Plaintiffs,**

v.

MENNONITE GENERAL HOSPITAL, INC., ET AL.,

**Defendants.**

**CIVIL NO. 26-1006 (RAM)**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court are Defendant Dr. Carlos A. Martinez-Crespi's *Motion to Dismiss* ("*Dr. Martinez-Crespi's Motion*") (Docket No. 29), Defendant Dr. Alexander Castro-Acevedo's *Motion to Join Co-Defendant's Motion to Dismiss, To Assert Supplemental Grounds, and for Judgment on the Pleadings* ("*Dr. Castro-Acevedo's Motion*") (Docket No. 33), and Mennonite General Hospital, Inc.'s (MGH) *Motion to Dismiss* ("*MGH's Motion to Dismiss*") (Docket No. 34) (collectively, the "*Motions*"). For the reasons set forth below, having considered the parties' submissions and in opposition and support of the same, the Court **GRANTS** Defendants Dr. Castro-Acevedo and Dr. Martinez-Crespi's *Motions* (Docket Nos. 29, 33) and **GRANTS in part and DENIES in part** Defendant MGH's *Motion* (Docket No. 34).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2024, at 2:20 a.m., Anthony Rosario-Rivera was transported to the front entrance of the Emergency Room of Hospital Menonita Cidra ("MGH-Cidra") by unknown individuals after he was found at a public bus stop suffering a suspected overdose. (Docket No. 1 ¶ 12). Mr. Rosario-Rivera was diagnosed by Dr. Castro-Acevedo as suffering from an overdose, after presenting signs of dry vomit, secretions in the left side of his face, non-reactive eyes, and respiratory distress. Id. ¶ 16. Dr. Castro-Acevedo gave Mr. Rosario-Rivera a Glasgow coma score of 3-8 and administered naloxone, flumazenil, and hydralazine. Id. ¶ 17. Mr. Rosario-Rivera subsequently had reactive pupils but remained non-responsive and his oxygen saturation levels improved from 63% to nearly 90%. Id. ¶ 18. Dr. Castro-Acevedo decided to transfer Mr. Rosario-Rivera, who was transferred by ambulance at approximately 3:00 a.m. Id. ¶¶ 19, 23. Mr. Rosario-Rivera was evaluated by Dr. Alejandro Marmolejo-Morales, who diagnosed Mr. Rosario-Rivera with poisoning by unspecified substance and in critical condition. Id. ¶ 24. Dr. Marmolejo-Morales then requested consultation from internal medicine. Id. At approximately 11:05 a.m., Mr. Rosario-Rivera was evaluated by Dr. Armando Alvarez-Yulfo, who diagnosed Mr. Rosario-Rivera as suffering from drug overdose and accidental poisoning, recommended that Mr. Rosario-Rivera be admitted to the ICU. Id. ¶ 26. On January 10, 2024, Dr. Martinez-Crespi and Dr.

Stella Baez-Corujo examined Mr. Rosario-Rivera, and re-examined him each day until the 14th of January. Id. ¶¶ 27-28.

Mr. Rosario-Rivera arrived at the Emergency Room of Hospital Menonita Cayey ("MGH-Cayey") during the evening of January 12, 2024. Id. ¶ 33. On January 13, 2024, Mr. Rosario-Rivera's parents, Mr. Angel Rosario-Amaro and Mrs. Yariliz Rivera-Rivera, visited Mr. Rosario-Rivera at MGH-Cayey and provided MGH-Cayey with Mr. Rosario-Rivera's medical insurance information. Id. ¶ 34. Mr. Rosario-Rivera was transferred to the Intensive Care Unit of MGH-Cayey later that day. Id. ¶ 36. The reason stated in Mr. Rosario-Rivera's medical notes for not having already been in the ICU was a lack of available beds. Id. ¶ 37. Also on January 13, 2024, Dr. Stella Baez-Corujo expressed and affirmed in front of Mr. Rosario-Rivera's family members and other medical staff that Mr. Anthony Rosario-Rivera was going to die because of his cocaine overdose. Id. ¶ 41. Mr. Rosario-Rivera died the following day, on January 14, 2024, at approximately 1:50 p.m. Id. ¶ 37. An autopsy was performed on January 15, 2025, at the Puerto Rico Forensic Science Institute, and a forensic taxological laboratory test was performed, which failed to detect the presence of cocaine. Id. ¶ 43.

On January 8, 2026, Mr. Rosario-Rivera's parents, Yariliz Rivera-Rivera and Angel Rosario-Amaro in their individual capacity and as members of the Estate of Mr. Rosario-Rivera, (collectively,

"Plaintiffs") filed their *Complaint*. (Docket No. 1). Specifically, the *Complaint* alleges that Mennonite General Hospital violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by failing to adequately evaluate and treat Mr. Rosario-Rivera when he arrived at the MGH-Cidra Emergency Department and was then transferred to the MGH-Cayey Emergency Department (Counts I and II). Id. ¶¶ 45-48. The *Complaint* further alleges that MGH and physician co-Defendants committed medical malpractice in violation of Puerto Rico's General Tort Statute, P.R. Laws Ann. Tit. 31 § 10801 (Counts III-IX). Id. ¶¶ 49-69. Plaintiffs also assert that Dr. Stella Baez-Corujo defamed Mr. Rosario-Rivera and inflicted severe emotional distress on Plaintiffs (Count X). Id. ¶¶ 70-72. Accordingly, Plaintiffs seek compensation for their personal physical, emotional, and economic damages, damages for Mr. Rosario-Rivera's physical pain and suffering, and punitive damages for Defendants' gross negligence and MGH's willful violations of EMTALA. Id. ¶¶ 79-80.

On April 30, 2026, Dr. Castro-Acevedo filed an *Answer to the Complaint*. (Docket No. 24). In his *Answer*, Dr. Castro-Acevedo denies all allegations made against him and reserves several Affirmative Defenses, including failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and a statute of limitations bar. Id.

On May 15, 2026, MGH filed its *Answer*. (Docket No. 25). Therein, MGH denies all allegations made against it and reserves several Affirmative Defenses, including those asserted by Dr. Castro-Acevedo in his *Answer*. Id.

On May 26, 2026, Dr. Martinez-Crespi filed a *Motion to Dismiss* pursuant to F.R.C.P. 12(b)(6). (Docket No. 29). On June 20, 2026, Dr. Castro-Acevedo filed a *Motion to Join Co-Defendant Martinez-Crespi's Motion to Dismiss, to Assert Supplemental Grounds, and for Judgment on the Pleadings*. (Docket No. 33). To the extent that Drs. Martinez-Crespi and Castro-Acevedo's *Motions* are duplicative, Defendants assert that Plaintiffs' EMTALA claims against them fail as a matter of law and that the negligence claims are conclusory, do not give fair notice of the substance of the claim, and do not satisfy the Twombly and Iqbal pleading standards. (Docket Nos. 29 ¶¶ 15-24 and 33 ¶¶ 22-28). Dr. Martinez-Crespi's *Motion* also includes arguments that the derivative and punitive damages claims are conclusory and not tied to a plausible underlying claim. (Docket No. 29 ¶¶ 25-27). Dr. Castro-Acevedo's *Motion* contends that the negligence claim is time-barred by the statute of limitations and the Court should decline to exercise supplemental jurisdiction over the state-law negligence claims. (Docket No. 33 ¶¶ 25-28).

On June 25, 2026, MGH filed its *Motion to Dismiss*. (Docket No. 34). Therein, MGH asserts that Plaintiffs' attempt to

federalize state medical malpractice claims is improper, EMTALA claims are not about a correct diagnosis but rather a uniform screening process, failures to treat, stabilize, or staff adequately are not EMTALA violations, the EMTALA count is conclusory and duplicative of malpractice claims, and Plaintiffs failed to plead a disparate screening claim and that different treatment occurred as to similarly situated patients. Id. at 7-14.

Plaintiffs filed an *Opposition to Motion to Dismiss* as to Dr. Martinez-Crespi's *Motion* on June 30, 2026 ("*Opposition as to Dr. Martinez-Crespi*"); an *Opposition to Motion to Dismiss* as to Dr. Castro-Acevedo's *Motion* on July 21, 2026 ("*Opposition as to Dr. Castro-Acevedo*"), and an *Opposition to Motion to Dismiss* as to MGH's *Motion* on July 27, 2026 ("*Opposition as to MGH*"). (Docket Nos. 39, 43 and 44, respectively). Therein, Plaintiffs argue that Defendants' *Motions* attempt to impose a heightened pleading standard not found in the Federal Rules of Civil Procedure and, in the alternative, request leave to amend the *Complaint* to cure any defects. (Docket Nos. 39 ¶¶ 10-18 and 43 ¶¶ 19-28). As to Dr. Castro-Acevedo's *Motion* specifically, Plaintiffs assert that the F.R.C.P. 12(c) motion must fail as a matter of law because it was filed before pleadings are closed. (Docket No. 43 ¶ 17). Plaintiffs also argue that the statute of limitations does not bar Plaintiffs' claims because Plaintiffs did not learn of Mr. Rosario-Rivera's

actual cause of death until they received the autopsy report on January 15, 2025, id. ¶¶ 29-38, and Plaintiffs' medical malpractice claims must survive because the Court has not dismissed its EMTALA claims that give it federal question jurisdiction, id. ¶¶ 39-42.

With regards to MGH's *Motion*, Plaintiffs assert that MGH is barred from bringing a 12(b)(6) motion because it has already filed its *Answer*. (Docket No. 44 at 1). Plaintiffs further assert that enough facts and well-pled allegations exist in the *Complaint* for cognizable claims against MGH. Id. at 10-11.

## II. APPLICABLE LAW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id.

Motions for judgment on the pleadings may be filed "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). A party may move under Rule 12(c) once the defendant has filed its answer. Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 n. 3 (1st Cir. 2017). Consequently, in a case with multiple defendants, if even one has not filed its answer, the pleadings are not "closed" and a 12(c) motion is premature. *See, e.g.*, Powell v. City of Pittsfield, No. CV 18-30146-MGM, 2020 WL 7334313, at *4 (D. Mass. Dec. 14, 2020) (dismissing as premature a 12(c) motion when the defendant had not yet filed an answer). *But see Seber v. Unger,* 881 F.Supp. 323, 325 n. 2 (N.D. Ill. 1995) (discussing the "common practice of treating the premature Rule 12(c) motion as a Rule 12(b)(6) motion" with cases cited). Thus, it is within the Court's discretion to decide whether to dismiss the premature 12(c) motion without prejudice or to simply treat it as a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

If the Court grants a motion to dismiss, "leave should be freely given in the absence of apparent reasons, such as: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility…." Rivera-Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 185 (D.P.R. 2009) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

### A. Judgment on the Pleadings

#### 1. Dr. Castro-Acevedo's *Motion for Judgment on the Pleadings* is premature.

As a threshold matter, Defendant Castro-Acevedo's *Motion for Judgment on the Pleadings* (MJP) pursuant to F.R.C.P. Rule 12(c) is premature because pleadings have not closed in this case. F.R.C.P. Rule 12(c) ("*After the pleadings are closed*—but early enough not to delay trial—a party may move for judgment on the pleadings.") (emphasis added). Rather than dismissing without prejudice to refile as a motion to dismiss or to stay the motion until pleadings are closed, the Court will instead simply treat the *Motion* as a motion to dismiss pursuant to F.R.C.P. 12(b)(6). *See* McGuigan v. Conte, 629 F. Supp. 2d 76, 80 (D. Mass. 2009) (treating the MJP as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and highlighting the fact that the conversion "makes little [practical] difference").

#### 2. MGH's *Motion* under Rule 12(b)(6) will be converted to a 12(c) Motion for Judgment on the Pleadings for being filed after its *Answer*.

Under Rule 12(b)(6), "a motion raising the defense of failure to state a claim upon which relief may be granted must be made before the service of a responsive pleading[, such as an answer]." Puckett v. United States, 82 F.Supp.2d 660, 663 (S.D. Tex. 1999); Fed.R.Civ.P. 12(b). Rule 12(h), however, allows a party to raise the defense of a "[f]ailure to state a claim upon which relief can

be granted in a motion under Rule 12(c)" or "at trial." Fed.R.Civ.P. 12(h)(2). Thus, rather than dismissing the petition, "a number of courts recharacterize the Rule 12(b)(6) motion as a Rule 12(c) motion." Lu v. Menino, 98 F. Supp. 3d 85, 93 (D. Mass. 2015). The Court thus converts MGH's *Motion* filed under Rule 12(b)(6) to a Rule 12(c) MJP.

**B. EMTALA Claims**

To establish an EMTALA violation, a plaintiff must show that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

Cruz-Vázquez v. Mennonite Gen. Hosp., 717 F.3d 63, 68-69 (1st Cir. 2013) (internal citation omitted). "A plaintiff can bring a cause of action under either the screening or stabilization provisions of EMTALA, or both." López-Soto v. Hawayek, 175 F.3d 170, 177 (1st Cir. 1999). "Whether an EMTALA violation has occurred 'is essentially a fact-based reasonableness inquiry.'" Cintron v. Hosp. Comunitario El Buen Samaritano, Inc., 597 F. Supp. 3d 515, 528 (D.P.R. 2022) (internal citation omitted).

Here, Plaintiffs' Count I encompasses the EMTALA violations as against MGH-Cidra, including failure to provide proper medical

screening, failure to provide appropriate medical care, and to provide an appropriate transfer. Count II encompasses the EMTALA violations as against MGH-Cayey, including delay of medical treatment, failure to provide proper medical screening, and failure to provide appropriate medical care. (Docket No. 1).

**1. Plaintiffs' claims asserting a failure to administer appropriate emergency medical care and deliver timely treatment under EMTALA fail as a matter of law.**

Plaintiffs allege that both MGH facilities "failed to provide or initiate the appropriate emergency medical care" to Mr. Rosario-Rivera and that specifically MGH-Cayey delayed treatment of Mr. Rosario-Rivera's emergency medical condition in violation of EMTALA. (Docket No. 1 ¶¶ 46, 48).

"[D]elayed medical care, or *even improper medical care*, is not actionable under EMTALA. Cintron, 597 F. Supp. 3d at 533 (citing Torres Otero v. Hosp. Gen. Menonita, 115 F.Supp.2d 253, 259 (D.P.R. 2000)) (emphasis added). Under First Circuit precedent, delayed medical care is best handled as a state law medical malpractice claim, not as an EMTALA claim. *See, e.g.*, Correa, 69 F.3d at 1192 (explaining that EMTALA does not create a cause of action for medical malpractice). Claims of faulty screening or improper medical care are outside the scope of EMTALA's main role as a "limited 'anti-dumping' statute, not a federal malpractice statute." Reynolds, 218 F.3d at 83.

Accordingly, Count II and part (b) of Count I alleging MGH-Cidra fail[ed] to provide or initiate the appropriate emergency medical care required are hereby **DISMISSED WITH PREJUDICE.**

**2. Plaintiffs' EMTALA screening claim also fails.**

For an EMTALA screening violation to survive a motion to dismiss, a plaintiff must adequately allege that the hospital failed to provide "an appropriate medical screening." Reynolds v. MaineGeneral Health, 218 F.3d 78 (1st Cir. 2000). While "appropriate" is left undefined by the statute, the duty of a hospital includes, "providing an examination 'reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provid[ing] that level of screening uniformly to all those who present substantially similar complaints. The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly.'" Id. at 69 (citing Correa, 69 F.3d at 1192).

Here, Plaintiffs allege first that MGH-Cidra "fail[ed] to provide a proper medical screening of the patient while at the emergency department…." (Docket No. 1 ¶ 46). But later in the *Complaint*, Plaintiffs acknowledge that MGH-Cidra examined Mr. Rosario-Rivera and identified him as suffering from an emergency medical condition (overdose), which would constitute a proper medical screening of a patient, and that Mr. Rosario-Rivera's condition had improved. Id. ¶¶ 12-18 (listing the physical

condition of, and diagnosing, the patient). Further, Plaintiffs do not allege any facts regarding screening procedures at MGH-Cidra or how Mr. Rosario-Rivera was treated differently than similarly-situated patients. Cruz, 717 F.3d at 69 (explaining that "faulty screening… as opposed to disparate screening or refusing to screen at all, does not contravene the statute"). Thus, here, the "procedures followed in the emergency room, even if they resulted in a misdiagnosis, were reasonably calculated to identify the patient's critical medical condition." Id. ¶ 12; del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 21 (1st Cir. 2002).

Plaintiffs similarly do not adequately allege that MGH-Cidra failed to properly stabilize the patient prior to transferring Mr. Rosario-Rivera to MGH-Cayey. (Docket No. 1 ¶¶ 13-21, 46). Plaintiffs state that MGH-Cidra did not properly stabilize Mr. Rosario-Rivera before his transfer to MGH-Cayey, but provide no allegations to support this assertion in their *Complaint* or their briefing. Instead, Plaintiffs point to what MGH-Cidra *did* do to stabilize Mr. Rosario-Rivera, including "the administration of naloxone, flumazenil, and hydralazine," which resulted in improved oxygen saturation levels and reactive pupils. (Docket No. 1 ¶¶ 17-18). Accordingly, part (a) of Plaintiffs' Count I alleging that MGH-Cidra fail[ed] to provide a proper medical screening of the patient while at the emergency department is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is given leave to amend the *Complaint* to cure

the deficiencies within this EMTALA claim. *See* Foman, 371 U.S. at 182.

**3. Plaintiffs adequately plead a failure to appropriately transfer claim under EMTALA.**

Plaintiffs adequately allege that MGH-Cidra failed to execute an appropriate transfer of Mr. Rosario-Rivera, in tandem with MGH-Cayey. Plaintiffs specifically state that Dr. Castro-Acevedo of MGH-Cidra failed to both properly stabilize Mr. Rosario-Rivera prior to his transfer and MGH-Cidra failed to conduct an appropriate transfer to MGH-Cayey. Id. ¶¶ 21-22. Under 42 U.S.C. § 1395dd(b)(1)(A), individuals with an emergency medical condition, like Mr. Rosario-Rivera, must be stabilized by the hospital or the hospital must provide an appropriate transfer within the meaning of subsection (c). Reynolds, 218 F.3d at 84. Dr. Castro-Acevedo of MGH-Cidra authorized a transfer of Mr. Rosario-Rivera, but the "transfer process was performed without the acceptance of" MGH-Cayey, as MGH-Cayey did not transfer the patient to the ICU "because of a lack of available bed," even though another Defendant, Dr. Armando Alvarez Yulfo of MGH-Cayey, evaluated the patient and recommended the admission of the patient to the ICU. (Docket No. 1 ¶¶ 26, 36-40).

Plaintiffs allege that the initial "admission" by MGH-Cayey to the Emergency Department was done in "bad faith" to avoid EMTALA compliance issues. (Docket No. 1 ¶ 38). Mr. Rosario-Rivera, while being "admitted" by MGH-Cayey's Emergency Department, wasn't

admitted to the ICU until January 13th, despite having been in MGH-Cayey for nearly four days. (Docket No. 44 ¶ 26). Importantly, ICU admission appears to have been the purpose of the transfer from MGH-Cidra to MGH-Cayey. (Docket No. 1 ¶¶ 19, 26). However, it was only after Mr. Rosario-Rivera's parents supplied his medical insurance information that he was admitted to the ICU. (Docket No. 1 ¶¶ 34, 36). Thus, "drawing all reasonable inferences in the pleader's favor," Plaintiffs state a cognizable claim of failure to appropriately transfer under EMTALA. Schatz, 669 F.3d at 55.

Accordingly, Defendant MGH's *Motion to Dismiss* as to Claim I is **DENIED**.

**C. Plaintiffs' state law claims are subject to this Court's supplemental jurisdiction.**

"A federal court exercising original jurisdiction may assert supplemental jurisdiction over state law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" de Jesus Correa v. Hosp. Espiscopal San Lucas, 573 F. Supp. 3d 618, 626 (D.P.R. 2021) (citing 28 U.S.C. § 1367(a)). Plaintiffs' medical malpractice claims are "so related" to Plaintiffs' EMTALA claims such that the Court will exercise its supplemental jurisdiction over them. Id.; *see also* Millan v. Hosp. San Pablo, 389 F. Supp. 2d 224, 237 (D.P.R. 2005) (ruling that supplemental jurisdiction is proper when there is a common nucleus of operative fact and the federal question cause of action remains).

**D. Plaintiffs' negligence claims as to Dr. Castro-Acevedo are not time-barred.**

Under Puerto Rico law, medical malpractice tort claims are subject to a one-year statute of limitations, though the "discovery rule" applies. 31 L.P.R.A. § 5298; Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993) ("The one-year period does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit."). A plaintiff need not know the "'full extent of the injury' 'or that it was negligently inflicted,' in order for the statute of limitations to begin to run." Morales-Melecio v. United States (Dep't of Health & Hum. Servs.), 890 F.3d 361, 369 (1st Cir. 2018) (cleaned up). "[D]efinitive knowledge of the cause of injury is not required to trigger the accrual of a medical malpractice claim," rather a plaintiff must only know of the injury and the "facts establishing the probable cause of the injury." Id. (internal citations omitted). Facts establishing the probable cause of the injury are those that are sufficient "to raise an alarm in a reasonable person that the probable cause of [the decedent's] death was connected to the defendants' treatment." Id. The circumstances of an individual's death are often established in a death certificate or autopsy report.

In Dr. Castro-Acevedo's *Motion to Dismiss*, he asserts that the negligence claims against him are barred by the one-year

statute of limitations for Puerto Rican tort claims.[1] (Docket No. 33 ¶¶ 29-34). Plaintiffs in their *Opposition as to Dr. Castro-Acevedo* argue that the statute of limitations had not run because they did not receive a copy of the autopsy report until February 15, 2025, which explained that Mr. Rosario-Rivera's toxicology report did not detect the presence of cocaine, thus implying that he may have not died of a cocaine overdose. (Docket No. 43 ¶¶ 25-28).

Plaintiffs' claims are not time-barred. At this early stage of the proceedings, the Court finds that Plaintiffs have adequately plead the reasons for failing to bring suit within one year from the death of Mr. Rosario-Rivera. Namely, without an autopsy report (or other similar report) and a patient who was nonresponsive during the relevant period, Plaintiffs were not armed with sufficient facts that establish the probable cause of the injury. Morales-Malecio, 890 F.3d at 369. Notably, there is nothing in the record evincing when or if Plaintiffs received a death certificate. *Cf.* id., 890 F.3d at 369 (concluding that the plaintiffs' actual knowledge of the circumstances of the decedent's cause of death from the death certificate was enough to start the statutory clock).

[1] The Court notes that Dr. Martinez-Crespi does not raise the same statute of limitations argument in his *Motion*, but the same holding here would apply to the medical malpractice claim as against he and the other two physicians, Dr. Stella Baez-Corujo and Dr. Armando Alvarez-Yuflo, named in the *Complaint*.

Thus, the Court holds that the clock did not begin to run until February 15, 2025. Plaintiffs filed this claim on January 8, 2026, well within the one-year statute of limitations. Therefore, Plaintiffs' negligence claims are not time-barred.

**E. The claims against Drs. Castro-Acevedo and Martinez-Crespi are insufficiently pled..**

Medical malpractice claims in Puerto Rico require the following elements: "the duty owed, the occurrence of an act or omission constituting a breach of that duty, and a sufficient causal nexus between the breach and some resultant harm.'" Martínez-Serrano v. Quality Health Servs. of P.R., Inc., 568 F.3d 278, 285 (1st Cir. 2009) (internal citations omitted). A plaintiff does not have to plead facts sufficient to establish a prima facie case in her complaint, but the elements of the cause of action are a "useful framework in evaluating plaintiff's allegations." Velez v. Metro Santurce, Inc., 950 F. Supp. 2d 349, 350-51 (D.P.R. 2013).

Here, Plaintiffs' negligence claims allege the following: "Dr. Alexander Castro-Acevedo was negligent in the treatment offered to the patient. Dr. Castro-Acevedo['s] evaluation and treatment of the patient deviated from the expected medical standards recognized by the medical profession."[2] (Docket No. 1 ¶¶ 56-57). Plaintiffs highlight facts elsewhere in their *Complaint*,

[2] The Court highlights the language as to Dr. Castro-Acevedo, but identical language is used for all the physicians named in the *Complaint*. (Docket No. 1 ¶¶ 58-69).

including: the condition Mr. Rosario-Rivera was in when he arrived at MGH-Cidra, the date Mr. Rosario-Rivera was under the care of Dr. Castro-Acevedo (January 9, 2024), that Dr. Castro-Acevedo decided to transfer Mr. Rosario-Rivera to MGH-Cayey before he was stabilized on January 9, 2024, the date that another physician named in the complaint, Dr. Alvarez-Yulfo, recommended Mr. Rosario-Rivera be transferred to the ICU (January 10, 2024), the dates that Dr. Martinez-Crespi examined Mr. Rosario-Rivera (January 10-14, 2024), the date that Mr. Rosario-Rivera was admitted to the ICU (January 13, 2024), Mr. Rosario-Rivera's death date (January 14, 2024), and the date they received Mr. Rosario-Rivera's autopsy report (February 15, 2025). (Docket No. 1 ¶¶ 12-20, 27-29). Thus, whilst under the care of first Dr. Castro-Acevedo and later Dr. Martinez-Crespi, Plaintiffs allege that both physicians were negligent in their managing of Mr. Rosario-Rivera, and that he died as a result.

Dr. Castro-Acevedo and Dr. Martinez-Crespi's *Motions* argue that the allegations are bereft of details of exactly how the Defendants were negligent and the causal connection between that negligence and the damage suffered. The Court agrees. Accordingly, even accepting Plaintiffs' well-plead allegations, the Court cannot ascertain each physician's allegedly negligent conduct in the care of Mr. Rosario-Rivera.

Because Plaintiffs have not pled their negligence claims such that would "plausibly give rise to an entitlement to relief," the Court rules that Plaintiffs' negligence claims as to Drs. Castro-Acevedo and Martinez-Crespi are **DISMISSED WITHOUT PREJUDICE.** Plaintiff is given leave to amend the *Complaint* to cure the deficiencies within these negligence claims. *See* Foman, 371 U.S. at 182.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Dr. Castro-Acevedo and Dr. Martinez-Crespi's *Motions* at Docket Nos. 29 and 33, and **GRANTS in part and DENIES in part** Defendant MGH's *Motion* at Docket No. 34. Consequently, Plaintiffs' Count I, part (a) and Counts V and VIII are **DISMISSED WITHOUT PREJUDICE** and Count I, part (b), and Count II are **DISMISSED WITH PREJUDICE**. Plaintiffs are **given leave to file** an amended complaint. Plaintiffs will have **14 days** to file the amended complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of October 2026.

s/ Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE